<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :        Chapter 7
In re:                                                  :
                                                        :        Case No. 11-36861 (CGM)
Joseph T. Bambi and Deirdre E. Bambi                    :
                                                        :
                        Debtors.                        :
------------------------------------------------------------X

**MEMORANDUM DECISION SANCTIONING HUDSON CITY SAVINGS BANK FOR
FAILURE TO PARTICIPATE IN GOOD FAITH IN LOSS MITIGATION**

**APPEARANCES:**

Mathew Paul Wattoff
14 Main Street.
Hyde Park, NY 12538
By: Mathew P. Wattoff
*Attorney for Debtor*


Hogan Lovells
875 Third Avenue
New York, NY 10022
By: Brian J. Grieco
*Attorneys for Wells Fargo Bank, N.A.*

**CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE**


On December 27, 2012, this Court signed an Order to Show Cause directing Hudson City

Savings Bank to appear before the Court and show cause why it should not be sanctioned for

failing to participate in good faith in the ongoing Loss Mitigation proceeding.  As directed,

Hudson City Savings Bank appeared on February 27, 2013 and informed the Court that they

were prepared to offer the Debtors' a loan modification.  At the April 9, 2013 hearing, no loan

modification paperwork had been provided to the Debtors and no representative from Hudson

City Savings Bank appeared at the hearing.  For the following reasons, the Debtors' Order to

Show Cause is granted, and sanctions are ordered against Hudson City for its failure to

participate in good faith in the Loss Mitigation process.

### Background

The Debtors filed their chapter 7 petition on June 29, 2011 and received a discharged on

July 25, 2011.  In the interim, on July 12, 2011, they requested Loss Mitigation[1] with Wells

Fargo Home Mortgage, as to a first mortgage on their residence.  ECF No. 9.  Pursuant to the

Loss Mitigation Program Procedures, a creditor has 14 days to object to the Loss Mitigation

Request.  Rather than file an objection, on August 1, 2011, Wells Fargo Bank, N.A. ("Wells

Fargo"), filed a "Creditor Loss Mitigation Affidavit" in which it requested the documents

necessary to review the Debtors' loan for Loss Mitigation.  ECF No. 12.  Wells Fargo is the

servicer of the Debtors' home mortgage loan.  The loan is currently owned by the "investor,"

Hudson City Savings Bank ("Hudson City").   On August 3, 2011, an Order granting Loss

Mitigation was entered and the Debtors and Wells Fargo began negotiations.  ECF No. 13.

On August 11, 2011, the Debtors filed the "Debtor Loss Mitigation Affidavit," advising

Debtors had submitted the documents requested by Wells Fargo.  ECF No. 14.  Thereafter, five

status updates—between August 24, 2011 and February 21, 2012—were filed on behalf of Wells

Fargo, the servicer of the loan.  *See* Status Updates, ECF Nos. 16, 17, 21, 25, and 27.   These

updates provided the Court with information relating to outstanding document requests as well as

the general progress of the Loss Mitigation proceedings.  Based on these status reports and the

---

[1] "The term 'Loss Mitigation' is intended to describe the full range of solutions that may avert either the loss of a
debtor's property to foreclosure, increased costs to the lender, or both. Loss mitigation commonly consists of the
following general types of agreements, or a combination of them: loan modification, loan refinance, forbearance,
short sale, or surrender of the property in full satisfaction. The terms of a Loss Mitigation solution will vary in each
case according to the particular needs and goals of the parties."  Southern District of New York Loss Mitigation
Program Procedures 1 (April 14, 2013), available at http://www.nysb.uscourts.gov/loss-mitigation.

parties' appearances at status conferences, Loss Mitigation appeared to be progressing subject to the usual issues.  In a telephone conference between the parties and in a status update letter filed on April 13, 2012, Wells Fargo indicated that the "investor," Hudson City, does not allow the following in regard to loan modifications:

- Home Affordable Modification Program or other government relief programs;

- Reduction of principal balance (principal forgiveness);

- Capitalization of arrears;

- Modification of interest rate;

- Extension of maturity date.

ECF No. 29.  These restrictions make it virtually impossible for the investor to modify a loan.  In the same letter, it was noted that the Debtors' are ineligible for a repayment plan because they have a monthly budget surplus.

At the April 18, 2012 status conference, the parties advised the Court that the investor does not perform loan modifications.  In response to this information, the Debtors' requested a copy of Hudson City's investor guidelines, and the Court ordered Hudson City to provide them. ECF No. 32.  A letter purporting to be the investor guidelines was filed on May 9, 2012.  ECF No. 33.  This letter, dated February 17, 2010 and signed by a vice president of Hudson Savings, repeated the information that was provided in the April 13, 2012 status letter.

At a hearing held on May 16, 2012, the Court was shown the letter that was provided and determined it did not satisfy the order to provide investor guidelines.  The parties also informed the Court that the assignment of this mortgage loan from Union Federal Savings and Loan to Hudson City Savings Bank was never recorded.

At the next status conference, on June 5, 2012, a bank representative from Hudson City appeared and informed the Court that Hudson City only performed modifications on loans it serviced itself.  Such a policy appeared to conflict with Hudson City's investor guidelines and website, both of which stated that Hudson City performed loan modifications.   The representative then stated that, beginning at this hearing, Hudson City would change its investor guidelines to allow its servicers to modify loans.  These procedures would require that the Debtors satisfy certain debt-to-income and loan-to-value ratios, including a requirement that the mortgage loan could not be more than 95% of the home's value.  Such a policy precludes most homeowners from achieving modifications on Hudson City loans since most Debtor's seeking Loss Mitigation have homes that are significantly underwater.

Despite these rigorous guidelines, Debtors believed they would qualify for a modification with Hudson City.  Negotiations continued, and despite being denied based on their expenses, the parties advised the Court at the July 24, 2012 status hearing that Hudson City agreed to re-review the Debtors if they obtained an appraisal of their home which showed  they satisfied the loan-to-value requirement.  At the September 19, 2013 status hearing, Debtors stated that they obtained the appraisal which confirmed they qualify under the income-to-value prong of Hudson City's new guidelines.  This appraisal was sent to the attorney for Wells Fargo as servicer for Hudson City on September 18, 2012, and at the hearing the next day the Wells Fargo requested time to perform its own appraisal.  The Court granted the request and instructed Wells Fargo to have an answer on the Debtors' eligibility for a modification before the November 28, 2012 status conference, which was ultimately adjourned as no appraisal had yet been completed.

On December 19, 2012, almost three months after being provided with the Debtors' appraisal, counsel for Wells Fargo as servicer for Hudson City appeared at the status hearing and

indicated that an independent appraisal had yet to be completed.  In addition, counsel to Wells

Fargo stated that communication between Hudson City and Wells Fargo had broken down.

Based on this information, on December 27, 2012, the Court ordered Hudson City to appear at

the February 27, 2013 status hearing and show cause "why an order sanctioning Hudson City

Savings Bank for its failure to participate in good faith in the Loss Mitigation Procedures,

pursuant to Fed. R. Bank. P 9011; 28 U.S.C. 1927; 11 U.S.C. § 105(a); and the inherent powers

of this Court; should not be entered forthwith."  ECF No. 45.

At the February 27, 2013 hearing on the Order to Show Cause, a bank representative

from Wells Fargo and a bank representative from Hudson City appeared.  Debtors' counsel

stated Debtors had been offered a modification orally and that he would file a motion to approve

the modification if the Debtors accepted the offer.  The Order to Show Cause was adjourned to

March 20, 2013 to allow Hudson City to prepare the necessary paperwork.  At the March 20,

2013 status hearing, counsel for Wells Fargo had a medical emergency and could not appear.

The Court adjourned the status conference and Order to Show Cause to April 3, 2013.

On March 29, 2013, the Debtors filed a status report and requested sanctions against

Wells Fargo, as servicer to the note and mortgage held by Hudson City, for failing to participate

in good faith in this Loss Mitigation process.  ECF No. 49.  According to the motion and an

attached Form 10-Q (which was filed with the United States Securities and Exchange

Commission in June 2012), Hudson City "adopted a Loan Modification Policy" during 2011.

*See* D. Status Rpt. 3, ECF No. 49; Form 10-Q Ex. A 58-59, ECF No. 49.  Debtors argued that

Hudson City intentionally failed to disclose this policy to the Court by filing investor guidelines

dated February 2010, which state a contradictory policy.   *See* D. Status Rpt. at 3.  Debtors also

argued that the Creditor never performed its own appraisal of Debtors' property and that the

terms offered to Debtors at the February 27, 2013 hearing were never provided in writing. Instead, the Debtors argue that they received a "Temporary Forbearance Agreement" that made no mention of modification of the Debtors' loan. Based on these allegations, the Debtors argue that Hudson City acted in bad faith, and seek $30,639.20 representing the monthly mortgage payment on the existing mortgage loan for the twenty months that elapsed during Loss Mitigation, as well as their attorney's fees and costs.

At the April 3, 2013 hearing, the Court was again informed that Debtors' counsel received a "Temporary Forbearance Agreement" which provided for three months of trial payments and contained no mention of the previously agreed upon terms and did not indicate whether a permanent modification would be forthcoming. Upon hearing this, the Court told counsel to Wells Fargo to "bring them all in" and "tell them to come see me" and carried the previously adjourned Order to Show Cause to April 9, 2013.

At the April 9, 2013 hearing, counsel to Wells Fargo and a lending officer from Wells Fargo appeared. Wells Fargo reported that the Debtor did not qualify for a modification; however, Debtors' counsel stated that he had been provided with a letter of intent to enter into a modification with the terms previously offered to Debtors if three trial payments were made. The offer was not in writing, and no representative from Hudson City appeared.

### Discussion

The Southern District of New York adopted its Loss Mitigation Program Procedures on December 18, 2008. *In re* Adoption of Loss Mitigation Program Procedures, Gen. Or. No. M-364 (Dec. 19, 2008), *available at* http://www.nysb.uscourts.gov/court-info/local-rules-and-orders/general-orders. "The premise of the Loss Mitigation program is simple: Put the decision-making parties in direct contact with each other, and set a schedule for their discussion as to what

can be done about the debtor's home."  Hon. Cecelia G. Morris & Mary K. Guccion, *The Loss Mitigation Program Procedures for the United States Bankruptcy Court for the Southern District of New York*, 19 Am. Bankr. Inst. L. Rev. 1, 4 (2011).  In furtherance of these goals, parties to Loss Mitigation proceedings "shall negotiate in good faith . . . [and a] party that fails to participate in Loss Mitigation in good faith may be subject to sanctions." *In re* Adoption of Modified Loss Mitigation Program Procedures, Gen. Or. No. M-413, Loss Mitigation Program Procedures at 4 (Dec. 29, 2010) (amending General Order M-364), *available at* http://www.nysb.uscourts.gov/court-info/local-rules-and-orders/general-orders. The Loss Mitigation program is "consistent with Congress and the federal courts' general encouragement of mediation, as well as with section 105(d) of the Bankruptcy Code, Bankruptcy Rules 7016 and 9014, and courts' inherent power to manage their own docket." *Hearing Testimony of Hon. Robert D. Drain*, "Foreclosure Mediation Programs: Can Bankruptcy Courts Limit Homeowners and Investors Losses?", United States Committee on the Judiciary (Feb. 1, 2011).

**Whether these Actions Amount to Bad Faith**

Loss Mitigation is similar to court-ordered mediation programs.  Morris & Guccion, *supra* at 54-60.  As such, the Court will apply the same standard for good faith participation in Loss Mitigation as is used in court-ordered mediation.  In order to participate in good faith in the Loss Mitigation process, a party is not required to offer a modification.  *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 384 (S.D.N.Y. 2011) (holding that parties cannot be forced to make a settlement offer and cannot be coerced into a settlement by the court).  However, "good faith" generally requires that parties attend conferences, provide any requested memoranda, and produce representatives with settlement authority.  *Id.* at 381.  In Loss Mitigation, where there is no appointed mediator overseeing the process, parties are expected to communicate openly with

each other regarding the status of the Loss Mitigation process.  Although parties need not

disclose confidential information, they should share basic information, including the basic

financial information of the Debtor and the basic parameters that the Debtor must meet in order

to be considered for a loan modification.

 While court-ordered mediation is usually an involuntary process, Loss Mitigation can be

either voluntary or involuntary depending on the facts of each case.  After a party requests Loss

Mitigation, the party served with the Loss Mitigation Request has 14 days to object and be heard

before a Loss Mitigation Order is entered.  If a party fails to object to the Loss Mitigation

Request within that timeframe and allows an order to enter, the process is "voluntary."  Loss

Mitigation may also be "court-ordered" if the Court enters an order over an objection to the Loss

Mitigation Request.  Under the Loss Mitigation Program Procedures, a party may request

termination of Loss Mitigation at any time.

 Based on the record in this case, encompassing letters and exhibits filed on the docket as

well as the representatives' testimony at prior hearings, it is clear that Hudson City has failed to

participate in good faith throughout this Loss Mitigation.  At the outset, Hudson City, through its

agent and servicer Wells Fargo, solicited documents from the Debtors, filed status letters, and

appeared at status hearings for almost eight months before finally informing the Debtors and the

Court that Hudson City did not modify loans.  Instead of volleying with the Debtors for

documents for several months, Hudson City should have opposed the Debtors' Loss Mitigation

Request or otherwise informed the Debtors and Court of this policy immediately.

 When Hudson City was ordered to provide its investor guidelines, it chose to file a letter

outlining its policy instead.  It is questionable whether this letter, dated February 2010,

accurately described Hudson City's loan modification policies that were in place at that time.[2]

The Court makes no determination on the accuracy of the letter but points to the inconsistency as

yet another example of the behavior exhibited by Hudson City in this case.  Despite its policy,

whatever it may have been, Hudson City appeared at a subsequent status conference hearing on

June 5, 2012 and informed the Court that it had implemented a "new" mortgage loan

modification program.

Accordingly, Hudson City agreed to review Debtors' financial package to determine

whether they would qualify for a loan modification.  Under the Hudson City's stated loan

modification procedures, the Debtors' would only be eligible if their loan was greater than 95%

of the value of the property.  Debtors' obtained an appraisal at their own expense, which

indicated that they would qualify under Hudson City's policy.

At a hearing on September 19, 2012, counsel for Wells Fargo as servicer for Hudson City

indicated that it would need an independent appraisal on the property.  At the next conference on

December 19, 2012, Wells Fargo's counsel indicated that no appraisal had been done.  In

addition to this almost six month delay in participating in this Court's Loss Mitigation process, it

was noted on the record of that hearing that Hudson City had stopped communicating with Wells

Fargo and its counsel.  As the ultimate owner of the Debtors' mortgage, such communication is

necessary to ensure good faith participation with regard to the Loss Mitigation proceeding.

At the original hearing to consider the instant Order to Show Cause, a representative from

Hudson City appeared before the Court and agreed on the record that the Debtors' would receive

---

[2]  Debtors attached a copy of Hudson City's Form 10-Q, dated June 30, 2012, to a status report they filed on March 29, 2013. *See* D. Status Rpt., Ex. A, ECF No. 49.  At pages 58-59, the 10-Q "During 2011, we adopted a Loan Modification Policy that, among other things, expands the modified loan programs currently offered by the Bank. We began to modify loans pursuant to this policy during the first quarter of 2012. . . ."  This disclosure, within a regulatory filing with the S.E.C. directly contradicts the "Investor Guidelines" letter dated February 2010 and docketed on May 9, 2012.

a trial loan modification.  Instead of sending the documents supporting that agreement right away, Debtors had to wait an additional month to receive any paperwork.  The paperwork they received was completely different than the offer made at the February 27, 2013 hearing.  The Debtors received paperwork for a "Temporary Forbearance Agreement" that made no mention of a modification.  At the April 2, 2013 hearing, having heard that Hudson City failed to provide the agreement as promised on the record, the Court carried the Debtors' Order to Show Cause and ordered all the parties to appear at the April 9, 2013 hearing.  Hudson City failed to appear at that hearing.  Moreover, the Debtors still had not received the modification documents as promised.

While these acts individually may not rise to the level of bad faith, together they show a pattern of evasive delay tactics.  Had Hudson City simply stated at the outset of these proceedings that it did not modify mortgages and provided relevant guidelines, there is little doubt that the Loss Mitigation process would have been terminated.  Instead, Hudson City chose to "move the goalpost" at every opportunity—stringing the Debtors and the Court along through a costly and drawn out process by failing to inform the Court and other parties about its modification policy, failing to provide investment guidelines as required by Court order, failing to obtain an appraisal of Debtors' property in a timely fashion, failing to provide written terms of the modification placed on the record of the February 27, 2013 hearing, and failing to appear at the April 9, 2012 hearing after being ordered to do so.  Such delay tactics caused these Debtors monetary damages for having to pay their attorney to appear at each status conference, having to provide new documents when requested, and having to obtain an appraisal at their own expense.  Despite Debtors' efforts in reliance on Hudson City's word, as of April 9, 2013, over a year and a half after Loss Mitigation was commenced, the Debtors were still not sure whether they would even be considered for a permanent modification.

This pattern of behavior leads the Court to find that Hudson City has failed to negotiate in good faith.

**Sanctions for failing to Participate in Good Faith**

The Loss Mitigation Program Procedures of the Southern District of New York specifically allow for the imposition of sanctions if a party fails to negotiate in good faith. *In re Adoption of Modified Loss Mitigation Program Procedures, Gen. Or. No. M-413, Loss Mitigation Program Procedures* at 4 (Dec. 29, 2010) (amending General Order M-364). The power to sanction parties who fail to participate in good faith during Loss Mitigation comes from the bankruptcy courts' "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders." *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002); *see also Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995), *cert. denied*, 516 U.S. 916 (1995) ("A court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad faith conduct"); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) ("The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)). Where "neither the statutes nor the rules afford a straightforward, comprehensive remedy[,]" bankruptcy courts may invoke their inherent powers along with § 105(a) to sanction a party that acts in bad faith. *Denville v. Cardinale (In re Deville)*, 280 B.R. 483, 495-96 (B.A.P. 9th Cir. 2002). This power may be used to require parties acting in bad faith to pay for the opposing party's attorney's fees. *Id.* at 496.

Courts may also use civil contempt pursuant to § 105(a) and Federal Rule of Bankruptcy Procedure 9020 to "to compel a reluctant party to do what a court requires of him." *Badgley v.*

*Santacroce*, 800 F.2d 33, 36 (2d. Cir. 1986); *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 336 B.R. 39, 52 (Bankr. S.D.N.Y. 2006); *Ionosphere Clubs, Inc. v. Shugrue (In re Ionosphere Clubs, Inc.)*, 171 B.R. 18, 21 (S.D.N.Y. 1994).

For failure to act in good faith pursuant to the Loss Mitigation procedures in the Bankruptcy Courts for the Southern District of New York, Hudson City is ordered to pay Debtors' attorney's fees from the June 5, 2012, the date that a Hudson City representative appeared in this Court and advised the parties of its modification policy, until the date the Final Report is filed on this Loss Mitigation.  Debtor's counsel should file with the Court a copy of his time records for that period.  Hudson City shall have the opportunity to object to the amount of fees, and the Court shall set an evidentiary to determine the amount of the sanction if Hudson City does object.

## Conclusion

For the foregoing reasons, the Court finds that Hudson City is in contempt of this Court's order directing it to appear at the April 9, 2013 hearing and orders Hudson City to pay Debtors' attorney's fees as a sanction for its failure to participate in good faith in this Loss Mitigation process.  Debtors' counsel shall submit an order consistent with this decision.


Dated: Poughkeepsie, New York
      May 9, 2013                           /s/ Cecelia G. Morris
                                       HON. CECELIA G. MORRIS
                                       CHIEF UNITED STATES BANKRUPTCY JUDGE